IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| JAMES V. DECARO, | ) | Civil Action No. 3:05-0199-TLW-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") to terminate his Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On July 7, 1993, Plaintiff applied for DIB. Plaintiff's application was approved initially and he was awarded a period of disability and DIB beginning November 27, 1992. In a November 1997 decision, benefits were continued. On September 16, 2002, the plaintiff was notified that he was no longer considered disabled due to an improvement in his medical condition. Plaintiff requested a de novo hearing before an administrative law judge ("ALJ"). The hearing was held on October 2, 2003, at which plaintiff and his counsel appeared. On December 18, 2003, the ALJ issued a decision that plaintiff's disability ceased in September 2002.

Plaintiff was forty-eight years old as of September 2002. He has a ninth grade education and past relevant work as a construction worker.

The ALJ found (Tr. 23-24):

1.  The claimant has not engaged in substantial gainful activity since the comparison point decision, February 2, 1998.

2.  At the time of the comparison point decision, the claimant continued to suffer from a discogenic and degenerative back disorder.

3.  The claimant's impairments do not meet or equal a current listed impairment in Appendix 1, Subpart P, Regulation No. 4.

4.  The medical evidence of record demonstrates that since the comparison point decision, the claimant has undergone medical improvement in regard to his ability to perform work related activities.

5.  The undersigned finds that the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.  The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments. (20 CFR § 404.1527).

7.  The claimant has the following residual functional capacity: to lift and carry items weighing 10 pounds frequently and 20 pounds occasionally; to sit for 6 hours in an 8-hour day with normal breaks: to stand and walk for 6 hours in an 8-hour day with normal breaks; to push and pull with hands and feet for the operation of arm and leg controls; and occasional overhead reaching.

8.  The claimant is unable to perform any of his past relevant work. (20 CFR § 404.1565).

9.  The claimant is a "younger individual between the ages of 45 and 49." (20 CFR § 404.1563).

10. The claimant has "a limited education." (20 CFR § 404.1564).

2

11.     The claimant has no transferable skills from any past relevant work. (20 CFR § 404.1568).

12.     The claimant has the residual functional capacity to perform the full range of light work. (20 CFR § 404.1567).

13.     Based on an exertional capacity for light work, and the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 202.17.

14.     The claimant is no longer under a "disability" as defined in the Social Security Act. (20 CFR § 404.1520(f)).

On November 26, 2004, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on January 21, 2005.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months…." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff alleges that: (1) the ALJ's finding of medical improvement is not supported by substantial evidence and is based on legal error; (2) the ALJ erred in disregarding the findings of

3

his treating physician; (3) the ALJ's finding that Plaintiff does not have a "severe" mental impairment is not supported by substantial evidence (and thus the ALJ failed to consider the combined effect of all of Plaintiff's impairments)[1]; and (4) the ALJ failed to properly assess Plaintiff's credibility.   The Commissioner contends that the ALJ's decision is supported by substantial evidence.[2]

Plaintiff was injured in a motor vehicle accident on November 27, 1992.  MRIs of his lumbar and cervical spine in January 1993 revealed a bulging disc at L4-5, with encroachment on the neural foramen; a herniated disc at C5-6, causing flattening of the spinal cord; and a small herniated disc at L5-S1.  See Tr. 29-30.  In a decision dated September 6, 1994, ALJ Emanuel Poverstein found that Plaintiff possessed the physical residual functional capacity ("RFC") to perform less than sedentary work and thus was disabled as of November 27, 1992.  Tr. 31.  In

---

[1]It is the claimant's burden to show that he had a severe impairment.  See Bowen v. Yuckert, 482 U.S. 137, 145 n. 5 (1987).  A non-severe impairment is defined as one that does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).  As the medical records discussed above indicate, Plaintiff did not seek any mental health care treatment until well after his disability ceased.  A claimant's lack of treatment may be considered in evaluating whether an impairment is disabling.  See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994)(finding that inconsistency between the level of claimant's treatment and her claims of disabling pain supported the conclusion that claimant was not credible).

[2]Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966).  It must do more, however, than merely create a suspicion that the fact to be established exists.  Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

November 1997, the agency found no significant medical improvement had occurred in Plaintiff's condition. See Tr. 92.[3]

Dr. Winston D. McIver, Jr. treated Plaintiff beginning in October 2001 for complaints of pain in his left shoulder, hip, and ankle; lumbosacral pain; psoriasis; degenerative joint disease; and chronic diarrhea. Tr. 142-155. On September 24, 2003, Dr. McIver completed a questionnaire concerning Plaintiff's ability to work. He opined that Plaintiff could sit for two hours and stand/walk for one hour in an eight-hour day; would need to get up and move around hourly; could lift and/or carry up to ten pounds occasionally; and that repetitive reaching, handling, fingering, or lifting would aggravate Plaintiff's pain. Dr. McIver also opined that Plaintiff was markedly limited in his ability to grasp, turn and twist objects; to use his fingers/hands for fine manipulation; and to use his arms for reaching, including overhead. He also thought that Plaintiff had psychological limitations which affected his ability to work. Dr. McIver opined that Plaintiff was unable to work. Tr. 283-289. On September 24, 2003 and June 24, 2004, Dr. McIver completed additional multiple impairment questionnaires. He opined that Plaintiff had the limitations outlined above and indicated that Plaintiff could not perform full-time competitive work. Tr. 304-311, 314-321.

On August 8, 2002, Plaintiff was examined by Dr. Jeffrey C. Wilkins, an orthopaedist. Dr. Wilkins noted that Plaintiff had normal strength, sensation, and reflexes of the upper and

---

[3]The Commissioner has used this November 23, 1997 date as the comparison point date ("CPD") as the actual CPD is not a part of the record. The continuing disability review advisory form has the CPD as January 29, 1998. Tr. 171. The ALJ referenced the CPD as February 2, 1998. Tr. 17. The Disability Hearing Officer noted that the CPD was November 23, 1997. Tr. 92.

lower extremities, and no ankle clonus or increased tone.  Examination of Plaintiff's hip revealed a negative Patrick's sign, passive range of motion without pain, negative log rolling, and no significant trochanteric tenderness.  Passive and active range of motion of Plaintiff's shoulders were within normal limits, and there was no tenderness to palpation of the AC joint, subdeltoid bursa, or biceps tendons.  Although Plaintiff had limited range of motion of his spine in lateral rotation in both directions, Dr. Wilkins noted that Plaintiff demonstrated far more range of motion when distracted.  Dr. Wilkins reviewed x-rays of Plaintiff's lumbar spine, cervical spine, and left ankle which he found were within normal limits.  He opined that Plaintiff was exaggerating based on minimal evidence of pathology on the x-rays and positive Waddell (indicating a non-physiologic basis for pain) and Hoover (a test for suspected unilateral hysterical paralysis) signs.  Dr. Wilkins thought that Plaintiff should be able to lift twenty pounds, use foot pedals, use his hands for fine manipulation, and only occasionally perform overhead lifting.

On November 14, 2002, Plaintiff was referred by Dr. McIver to Dr. Jeff A. Benjamin, a neurologist.  Examination revealed intact cranial nerves, normal muscle bulk and tone, brisk reflexes in all extremities, and normal sensation in all extremities.  He had decreased range of motion of lumbar spinal flexion, extension, and side bending; decreased range of motion of the cervical spine; and positive straight leg raising tests bilaterally.  His gait was normal.  Dr. Benjamin opined that Plaintiff was almost wheelchair bound by his pain, was disabled at that time, and implied that Plaintiff might need surgery.  Tr. 167-170.

On November 20, 2002, new MRIs of Plaintiff's cervical and lumbar spine were performed.  The cervical MRI revealed a loss of normal cervical lordosis and actual kyphotic

angulation in Plaintiff's cervical spine with a significant finding of a paracentral disc protrusion contacting the spinal cord at the C5-6 level.  Tr. 164.  At C6-7, there was a loss of height within the intervertebral disc with diffuse disc/osteophyte protrusion extending into the neural foramina bilaterally resulting in moderately severe bilateral neural foraminal stenosis.  Tr. 163-164.  The MRI of Plaintiff's lumbar spine revealed mild multilevel degenerative disc disease, a left-sided abnormality at L4-5 with mild left neural foraminal stenosis and an annular tear which was in close proximity of the foraminal segment of the left L4 nerve root.  Mild bilateral neural foraminal stenosis, mild degenerative signal loss within the intervertebral disc, and mild broad based annular protrusion eccentric to the left was seen at the L5-S1 level.  Tr. 165-166.

On February 21, 2003, Plaintiff was admitted to Conway Hospital with an initial diagnosis of chest pain.  He was discharged on February 24, 2003 with a diagnosis of chest pain, non-cardiac and secondary to anxiety.  Wellbutrin was prescribed.

From May 20, to July 29, 2003, Plaintiff began treatment at the Waccamaw Center for Mental Health.  Tr. 291-303.  At his initial assessment, Plaintiff denied any prior mental health treatment, but complained of anxiety attacks, which included chest pain, nausea, and shortness of breath, withdrawing from others, and crying spells.  Tr. 298.  He was diagnosed with panic disorder with agoraphobia.  He was treated with Paxil, Wellbutrin, and Lexapro.  Tr. 295, 296, 302.

At the October 2, 2003 hearing, Plaintiff testified his complaints of neck and back pain had not decreased and that he had numbness in his left arm and leg.  Tr. 333-334.  He stated that he had anxiety attacks a few times a week and did not go out of the house unless it was in his back

yard.  He thought that he could sit for thirty minutes to one hour and might be able to sit longer

on a good day.  Tr. 339-340.  He could stand for about the same time frame and could walk about

three blocks.  Tr. 339-340.  He used a cane daily.  Tr. 341.  Plaintiff testified that he could lift

anywhere from five to fifteen pounds.  Tr. 340.  He stated that he spent the day watching

television, looking at magazines, and taking his dog out in the backyard.  Tr. 341.

There is an eight-step sequential evaluation process to determine if a claimant's disability

has ceased.  This process requires the ALJ to consider, in sequence, whether (1) the claimant is

working, (2) the claimant has an impairment that meets or equals the requirements of a listed

impairment, (3) the claimant has experienced medical improvement in his condition, and if so, (4)

whether the medical improvement is related to the claimant's ability to work, and if so, (5)

whether the claimant has a severe impairment, (6) whether the claimant can perform work which

he has done in the past, or (7) whether there is other work the claimant can perform.[4]  See 20

C.F.R. §§ 404.1594(f)(1)-(8).  Medical improvement is defined as:

> any decrease in the medical severity of [a claimant's] impairment(s) which was
> present at the time of the most recent favorable medical decision that [the claimant
> was] disabled or continued to be disabled.  A determination that there has been a
> decrease in medical severity must be based on changes (improvement) in the
> symptoms, signs and/or laboratory findings associated with [claimant's]
> impairment(s).

20 C.F.R. §§ 404.1594(b)(1).

---

[4]This regulation provides an additional step if it is determined that there has been no
medical improvement or if it is found that the medical improvement is not related to the ability to
work.  If so, the ALJ is to consider certain exceptions in paragraphs (d) and (e) of § 404.1594.

8

The ALJ found that Plaintiff had medical improvement based on a lack of objective findings as shown by the consultative examination by Dr. Wilkins, the findings of neurologist Dr. Jeff Benjamin, and the results of Plaintiff's November 2002 MRIs.  Plaintiff argues that this decision is not supported by substantial evidence based on objective medical evidence including the 2002 MRIs and the findings of Drs. McIver and Benjamin.  He specifically alleges that the ALJ erroneously rejected the opinion of his treating physician.  The Commissioner contends that the ALJ properly considered the opinion of Plaintiff's treating physician.

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988), and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986).  In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician.  See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983).  The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled.  DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2).  The Court in Craig

9

found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

The ALJ does not appear to have considered all of the findings of Plaintiff's November 2002 MRIs, specifically as to Plaintiff's cervical MRI, in discounting the opinion of disability of Plaintiff's treating physician. In his decision, the ALJ wrote that the November MRI of the cervical spine "revealed normal cervical lordosis with mild dyphotic angulation of the c-spine apex at C5-6 with no abnormal signals in the spinal cord and a mild disc protrusion." Tr. 18. In the Sequential Evaluation section of his decision, the ALJ states that "the claimant's 2002 MRIs failed to reveal anything more than mild multi level degenerative disk disease and mild endplate herniation with no edema or nerve root impingement." Tr. 19-20. Review of the record reveals, however, that the cervical MRI revealed a "loss" of cervical lordosis and there was a paracentral disc protrusion contacting the spinal cord at the C5-6 level. At the C6-7 level there was a diffuse disc/osteophyte protrusion extending predominately into the neural foramina bilaterally resulting in moderately severe bilateral neural foraminal stenosis. There was also a loss of signal at C5-6 and a mild loss of signal at C7-T1. Tr. 163-164. The lumbar spine MRI also revealed an annular tear, closely approximating the foraminal segment of the left L4 nerve root. Tr. 166. The ALJ's decision relied on large part on the one-time examination by Dr. Wilkins. Dr. Wilkins based much of his opinion on a lack of objective medical findings, but he did not review the November 2002 MRIs. Additionally, Dr. McIver's opinion is supported by the opinion of disability of consultative physician Dr. Benjamin. Although some of Dr. Benjamin's findings such as normal

10

gait and normal muscle strength may not support a finding of disability, Dr. Benjamin also noted that Plaintiff he also noted that Plaintiff had decreased range of motion in his lumbar and cervical spines and positive bilateral straight leg raising.  Tr. 169.

This action should be remanded to the Commissioner to have the ALJ consider all of the evidence in evaluating whether Plaintiff has had medical improvement.  In doing so, the ALJ should evaluate the opinions of Plaintiff's treating physician (Dr. McIver) in light of all of the evidence of record.

The ALJ's analysis of Plaintiff's credibility is also affected by the ALJ's determination that there was a lack of objective findings.  This is based, in part, on the opinion of Dr. Wilkins, who did not have the benefit of viewing the November 2002 MRIs.[5]  If it becomes necessary to continue the sequential evaluation process, the ALJ should evaluate Plaintiff's credibility in light of all of the medical and non-medical evidence.[6]

---

[5]At the hearing, Plaintiff objected to the inclusions of this report in the records because Dr. Wilkins allegedly only examined Plaintiff for five minutes; did not examine Plaintiff's hip, knee, shoulder, spine, or ankle as indicated; and only examined Plaintiff's hands by asking Plaintiff to open and close them.  Tr. 327-328.  The ALJ noted the objection, but did not address it in his decision.

[6]In assessing credibility and complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record.  See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994).  Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish

(continued...)

CONCLUSION

The Commissioner's decision is not supported by substantial evidence.  This action should be remanded to the Commissioner to evaluate whether Plaintiff has had medical improvement in light of the opinion of his treating physician and other medical evidence.

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set out above.

Respectfully submitted,

s/Joseph R. McCrorey
United State Magistrate Judge

February 28, 2006
Columbia, South Carolina

---

[6](…continued)
his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.   20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

12